UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNG HOANG NGUYEN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE<br>ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | No.  1:25-cv-1708 AC P<br><br><br>ORDER |

Petitioner, an immigration detainee proceeding through appointed counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The parties have consented to magistrate judge jurisdiction.  ECF No. 13.

I.      Factual and Procedural Background

Petitioner is a native and citizen of Vietnam who immigrated to the United States prior to 1995.  ECF No. 1 at 2.  Respondents have provided documentation indicating that petitioner became a lawful permanent resident in 1980.  ECF No. 16-1 at 5.  In 1991, petitioner was convicted of attempted murder and sentenced to a total of ten years in state prison.  Id. at 1.  In June 2003, an immigration judge issued a final order of removal, finding that he was subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(I).[1]  ECF No. 1 at 2; ECF No. 16-1.  Petitioner was

_____

[1]  For consistency, the undersigned will cite to the applicable United States Code sections
(continued)

1

detained from June 16, 2003, until sometime in March 2004. ECF No. 1 at 2. He was detained again from April 2008 to August 2008. Id. On July 25, 2025, petitioner was detained by Dallas Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) agents when he reported to the Dallas ERO Field Office for a check in. Id.; ECF No. 16 at 2; ECF No. 17 at 1.

On November 24, 2025, petitioner filed a pro se petition for writ of habeas corpus under § 2241 and request for injunctive relief, along with a motion for appointment of counsel. ECF Nos. 1, 3. The motion to appoint counsel was granted (ECF No. 6), and respondents were ordered to respond to the petition (ECF No. 9). Respondents have filed an opposition to the petition (ECF No. 16) and petitioner has filed a reply requesting that his petition be granted or, at minimum, that he be granted a preliminary injunction (ECF No. 17).

II.    Petition

The petition asserts four grounds for relief. First, petitioner alleges that his continued detention violates due process because his post-final removal order detention has extended beyond the presumptively reasonable six-month period and there is no significant likelihood that he will be removed in the reasonably foreseeable future. ECF No. 1 at 13-14. Next, he asserts that ICE's current procedures relating to the removal of persons to third countries, which provide little to no notice or process, violates due process, 8 U.S.C. § 1231, applicable implementing regulations, the Convention Against Torture (CAT), and the Administrative Procedures Act (APA). Id. at 14-15. Ground Three alleges that the third-country removal program is punitive and violates the Eighth Amendment and due process. Id. at 15-16. Finally, the petition asserts that petitioner's re-detention without notice or a demonstration of changed circumstances regarding the likelihood of removal violates due process, 8 C.F.R. § 241.13, and the APA. Id. at 17-18.

Respondents' sole argument in opposition is that petitioner's detention is lawful because "his post-removal-period detention has not yet exceeded the presumptively reasonable six-month

throughout without reference to the corresponding section of the Immigration and Nationality Act.

2

period set forth in Zadvydas" and he has not shown "there is no significant likelihood of removal in the reasonably foreseeable future."  ECF No. 16 at 2-3.

III.    Discussion

A.  Post-Removal Order Detention

Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." Id., § 1231(a)(1)(A).

> After the removal period expires, the Government "may" detain only four categories of people: (1) those who are "inadmissible" on certain specified grounds; (2) those who are "removable" on certain specified grounds; (3) those it determines "to be a risk to the community"; and (4) those it determines to be "unlikely to comply with the order of removal."  § 1231(a)(6).  Individuals released after the removal period remain subject to terms of supervision.  Ibid.

Johnson v. Arteaga-Martinez, 596 U.S. 573, 578-79 (2022).  When a noncitizen is released subject to terms of supervision, release can be revoked only when the noncitizen violates a condition of release or when "on account of changed circumstances" it is determined "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)-(2).  Petitioner's removal order on the basis of his attempted murder conviction falls within the "specified grounds" of § 1231(a)(6) and brings him within the scope of this discretionary detention provision.

In Zadvydas v. Davis, the Supreme Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  533 U.S. 678, 689 (2001).  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at 699.  "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention."  Id. at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the

3

reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Petitioner asserts that his post-removal order detention violates due process both because it has extended beyond the presumptively reasonable period for post-removal order detention and because his re-detention did not follow the procedures set out in 8 C.F.R. § 241.13. ECF No. 1 at 13-14, 17-18. Respondents argue that petitioner's detention is lawful because "his post-removal-period detention has not yet exceeded the presumptively reasonable six-month period set forth in Zadvydas" and he has not shown "there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 16 at 2-3. However, they admit that petitioner has been in custody since July 25, 2025, and do not dispute petitioner's representation that after his removal order became final he was detained for over eight months in 2004 and another period of approximately four months in 2008. See ECF No. 1 at 2.

Other courts to have considered the issue within the Ninth Circuit have found that the period of post-final removal order detention is cumulative. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (rejecting argument that detention clock restarts with each re-detention and finding detention not presumptively reasonable based on aggregate period of confinement); Jaranow v. Bondi, No. 2:25-cv-2396 TL, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026) (courts in Ninth Circuit have found "six-month period of detention need not be consecutive to reach the limit established in Zadvydas" (collecting cases)); Shaltapur v. Cantu, No. 25-cv-3995 PHX DWL CDB, 2025 WL 3724470, at *4 n.4 (D. Ariz. Dec. 18, 2025) (district courts within Ninth Circuit aggregate periods of detention) (collecting cases); Asfestani v. Current or Acting Field office Director, No. 1:25-cv-1562 SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025). "In fact, looking beyond the Ninth Circuit, '[m]ost courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.'" Phan v. Warden of Otay Mesa Det. Facility, No. 25-cv-2369 AJB BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (alteration in original) (collecting cases). The undersigned finds this reasoning persuasive and joins with these courts in finding the period of

4

post-final removal order detention should be aggregated when determining whether petitioner is within the presumptively reasonable six-month period. Petitioner's post-removal order detention, which already exceeded six months at the time he was re-detained, is therefore not presumptively reasonable.

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. There is nothing in the record to suggest any likelihood that petitioner will be deported to Vietnam in the reasonably foreseeable future, nor is there evidence in the record that respondents are taking any steps to remove petitioner to Vietnam. Instead, the record shows that for more than twenty years respondents have been unable to effect such a deportation, including during two prior detentions and petitioner's current detention, which now exceeds six months. Moreover, respondents do not dispute petitioner's representation that Vietnam has a long-standing policy of not accepting persons who immigrated from the country prior to 1995, and that that has not changed in any meaningful way even after the signing of a memorandum of understanding in 2020. ECF No. 1 at 2-3. On this record, petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and respondents have not produced any evidence that would rebut that showing.

In failing to rebut petitioner's showing, respondents have also failed to demonstrate that there has been a change in circumstances that would permit a determination that there is a significant likelihood that the petitioner may be removed in the reasonably foreseeable future. Nor have they submitted evidence or even alleged that petitioner has violated any conditions of his release. Respondents have therefore failed to comply with their own regulations regarding the revocation of post-final removal order release, rendering petitioner's continued detention unlawful. See 8 C.F.R. § 241.13(i)(2) (outlining grounds and procedures for revocation of release); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations." (citation omitted)). "Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful,

and the petitioner's release must be ordered." Truong v. Noem, No. 25-cv-2597 JES MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases); Morales Sanchez v. Bondi, __ F. Supp. 3d __, 2025 WL 3651899, at *4-6 (C.D. Cal. Dec. 5, 2025) (ICE's failure to follow regulations demonstrated detention was likely unlawful and entitled petitioner to release); Khachikian v. Casey, No. 25-cv-3737 GPC JLB, 2026 WL 63633, at *8 (S.D. Cal. Jan. 8, 2026) (ICE's violation of 8 C.F.R. § 241.13(i)(2) and (3) entitled petitioner to habeas relief).  The undersigned joins these courts in finding respondents' failure to comply with § 241.13(i) renders petitioner's re-detention unlawful.

### B. Third-Country Removal

"When an alien is found ineligible to remain in the United States, the process for selecting the country to which he will be removed is prescribed by 8 U.S.C. § 1231(b)(2)." Jama v. ICE, 543 U.S. 335, 337 (2005).

> The statute . . . provides four consecutive removal commands: (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless one of the conditions eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection (clauses (i) to (vi) of subparagraph (E)); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to "another country whose government will accept the alien into that country" (clause (vii) of subparagraph (E)).

Id. at 341.  Third-country removals represent the fourth command and involve deportation to countries that are not identified in a final removal order and to which the non-citizen has no connection.  See 8 U.S.C. § 1231(b)(2)(E)(vii).

Petitioner asserts that ICE's current procedures relating to the removal of persons to third countries violates due process, 8 U.S.C. § 1231, implementing regulations, the CAT, and the APA, and that the program is punitive in violation of the Eighth Amendment and due process.  ECF No. 1 at 14-16.  The petition alleges that ICE's current third-country removal procedures provide "that ICE may deport [a] person without any procedures for notice or an opportunity to be heard if the State Department confirms that it has received diplomatic assurances that individuals will not be persecuted or tortured."  Id. at 3 (citing Y.T.D. v. Andrews, No. 1:25-cv-

1100 JLT SKO, 2025 WL 2675760, at *9 (E.D. Cal. Sept. 18, 2025)).  Where no diplomatic assurances are received, officers are instructed to generally wait at least twenty-four hours after serving a notice of removal before effectuating removal but that in exigent circumstances a removal order can be effectuated in as little as six hours after notice if the individual "is provided reasonable means and opportunity to speak with an attorney prior to removal."  Id. (citing Y.T.D., 2025 WL 2675760, at *9-10.  Officers are "instruct[ed] *not* to ask whether the individual is afraid of removal to that country" and removal is allowed to proceed so long as "the noncitizen 'does not affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours.'"  Id. (citing Y.T.D., 2025 WL 2675760, at *10).

Respondents do not address these issues or challenge petitioner's representations of ICE's current third-country removal procedures in their response.  ECF No. 16.  Respondents also do not challenge petitioner's allegations that their third-country removal policy is punitive in nature and has resulted in noncitizens being removed to countries to which they have no ties and where they have been imprisoned, and that in at least one case a noncitizen was sent to another country where he would likely be tortured.  See ECF No. 1 at 4-5.

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings."  Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)).  "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."  Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999) (citation omitted) (addition of alternate country for removal at end of asylum hearing after close of evidence violated due process); Sadychov v. Holder, 565 F. App'x 648, 651 (9th Cir. 2014) (if designated country of removal is changed, "the agency must provide [noncitizen] with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal" from newly designated country (citation omitted)); Najjar v. Lynch, 630 F. App'x 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an

7

opportunity to address his fear of persecution in that country.").

Joining numerous other courts, the undersigned finds that ICE's policy for third-country removals—which provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim—is incompatible with Ninth Circuit law and violates due process. See Vishal v. Chestnut, __ F. Supp. 3d __, 2025 WL 3511815, at *6 (E.D. Cal. Dec. 8, 2025) (noting "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent" and concurring (citing cases)); Giebashvili v. Noem, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (same) (collecting cases); Nguyen, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy." (citing Andriasian, 180 F.3d at 1041; Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)); Gomez v. Mattos, __ F. Supp. 3d __, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025) ("Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country."). The undersigned further finds that "the risk of removal without due process itself constitutes a concrete injury," Daneshfar v. Facility Adm'r, No. C25-1708 DGE MLP, 2025 WL 4037745, at *3 (W.D. Wash. Dec. 16, 2025); Esmail v. Noem, No. 2:25-cv-8325 WLH RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025), and that actual removal without notice or meaningful process is an injury that cannot be remedied once removal occurs, see Louangmilith v. Noem, __ F. Supp. 3d __, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025) (once a noncitizen is removed without notice or opportunity to be heard "it will be too late for the individuals to meaningfully challenge the removal"). Petitioner is therefore entitled to relief on this ground and respondents will be enjoined from removing him to a third country without first providing adequate notice and an opportunity to raise a fear of removal.

To the extent petitioner asserts that the third-county removal policy is punitive because the government is deliberately removing individuals to countries where they will be imprisoned and government officials have made statements indicating that third-country removals are intended as punishment (ECF No. 1 at 4-6, 15-16), respondents have not addressed these claims at all (ECF No. 16). As petitioner points out in his reply, Federal Rule of Civil Procedure 8 deems such

silence an admission.  See Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.").

In arguing that the government's policy is punitive and therefore unconstitutional, petitioner relies on Wong Wing v. United States, 163 U.S. 228 (1896).  ECF No. 1 at 12-13, 15. In Wong Wing, the United States Supreme Court "held unconstitutional a statute that imposed a year of hard labor upon aliens subject to a final deportation order."  Zadvydas, 533 U.S. at 694.

> The Court held that while "it is within the constitutional power of congress" to deport those unlawfully present in the United States, Congress could not add to the sanction of expulsion the "punishment by imprisonment at hard labor . . . without a trial by jury." [Wong Wing, 163 U.S.] at 235, 16 S. Ct. 977.  The Court explained that there is a fundamental difference between "detention or temporary confinement" while awaiting deportation and "imprisonment at hard labor."  Id. at 236, 16 S. Ct. 977.  The latter, the Court concluded, was an "infamous punishment" that could only be imposed following a criminal trial with the full protection of the Fifth and Sixth Amendments.  Id. at 237-38, 16 S. Ct. 977.

Nguyen, 796 F. Supp. 3d at 733.  The Court concluded "that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law."  Wong Wing, 163 U.S. at 238.

Based on petitioner's uncontested allegations, the undersigned finds that, to the extent it deliberately seeks to remove noncitizens to countries where they will be imprisoned upon arrival, the government's third-country removal policy is punitive and violates due process.  See Baltodano v. Bondi, No. C25-1958 RSL, 2025 WL 3484769, at *7-10 ("the Government's practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under Wong Wing, 163 U.S. 228 at 236-38 (1896), and Zadvydas, 533 U.S. 678 at 693-94 (2001)).

<u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that:

1.  The petition for writ of habeas corpus (ECF No. 1) is GRANTED.

2.  Respondent must IMMEDIATELY RELEASE petitioner Dung Hoang Nguyen from

custody under the same conditions of release to which he was subject prior to his July 25, 2025, detention.  At the time of release, respondents must return all of petitioner's documents and possessions to him.

3.   Within three days of the date of this order, respondents shall file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his July 25, 2025 detention.

4.   Respondents are PERMANENTLY ENJOINED AND RESTRAINED from seeking to revoke petitioner's supervision unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i), any other applicable statutes and regulations, and the requirements of due process.

5.   Respondents are PERMANENTLY ENJOINED AND RESTRAINED from removing petitioner to a third country unless respondents adhere to the following procedures:

    a.   Provide petitioner a meaningful opportunity and a minimum of ten days to raise a fear-based claim for protection prior to removal;

    b.   If petitioner demonstrates reasonable fear of removal to the third country, respondents must move to reopen petitioner's removal proceedings;

    c.   If petitioner is not found to have demonstrated a reasonable fear of removal to the third country, respondents must provide a meaningful opportunity and a minimum of fifteen days for petitioner to seek reopening of his immigration proceedings.

6.   Respondents are PERMANENTLY ENJOINED AND RESTRAINED from removing petitioner to any country where he is likely to face imprisonment upon arrival.

7.   The Clerk of the Court shall enter judgment in favor of petition and close this case.

DATED: February 3, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

10